UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALLEGANY CAPITAL ENTEPRISES, LLC, et al.,

                          Plaintiffs,

        v.                                          **DECISION AND ORDER**

                                                    19-CV-160S

GRETCHEN COX, et al.,

                          Defendants.


# Table of Contents

I.   Introduction ................................................................................................ 2

II.  Background ................................................................................................ 3

    A.  Parties ................................................................................................ 3

        1.  Plaintiffs ...................................................................................... 3

        2.  Defendants.................................................................................. 4

        3.  Susanville Indian Rancheria, SIRCO, Diamond Mountain Manufacturing, and the Arbitration.................................................................................. 4

    B.  Complaint and Amended Complaint (Docket Nos. 1, 8) ........................ 5

        1.  Allegations .................................................................................. 5

        2.  Causes of Action ........................................................................ 7

    C.  Motion to Dismiss (Docket No. 17) ...................................................... 8

III. Discussion ................................................................................................ 9

    A.  Applicable Standards............................................................................ 9

        1.  Motion to Dismiss ....................................................................... 9

        2.  Tribal Sovereign Immunity and Jurisdiction.................................. 10

        3.  Necessary Party, Rule 19 ............................................................ 18

        4.  Personal Jurisdiction .................................................................. 19

        5.  Pleading of Fraud, Rule 9(b) ...................................................... 21

        6.  Choice of Law ............................................................................ 21

        7.  Applicable New York Common Law .............................................. 23

B.  Parties' Contentions ........................................................................... 24

   1.  Defendants................................................................................ 24

   2.  Plaintiffs .................................................................................. 25

   3.  Defense Reply (Docket No. 22)................................................ 26

C.  Documents Considered in this Motion to Dismiss .............................. 27

D.  Official Capacity and Tribal Sovereign Immunity ............................... 28

   1.  Tribal Sovereign Immunity and Arm of the Tribe ..................... 28

   2.  Capacity of Suit........................................................................ 34

   3.  Impact of Extending Tribal Sovereign Immunity ...................... 35

E.  DMM as a Necessary Party................................................................ 36

F.  Long Arm Jurisdiction ........................................................................ 37

   1.  CPLR Long Arm Jurisdiction .................................................... 37

   2.  Constitutional Due Process ...................................................... 39

G.  Pleading with Particularity ................................................................. 42

   1.  First Cause of Action ................................................................ 42

   2.  Second Cause of Action ........................................................... 45

   3.  Failure to Allege Breach of Contract ........................................ 46

H.  Justifiable Reliance, Third and Fourth Causes of Action ................... 46

IV.  Conclusion............................................................................................... 47

V.  Orders...................................................................................................... 48

### I.  Introduction

This is a diversity action commenced by a corporate entity affiliated with the Sac and Fox of Oklahoma Tribe (doing business in the Seneca Nation in New York) and a partnership doing business in the Seneca Nation.  They claim that Defendants, officers of affiliated corporations of the Susanville Indian Rancheria (a Native tribe in California, also referred to as "SIR"), made misrepresentations to Plaintiffs that led to Plaintiffs entering into the tobacco manufacturing and distribution contracts with one of the affiliated corporations.  Defendants represented that they had the authority to waive tribal sovereign immunity for the affiliate corporation and that the affiliate in fact waived that

immunity.  After an alleged breach of these contracts, Plaintiffs lodged claims against one of the affiliate corporations, but the corporation successfully asserted that it did not waive its tribal sovereign immunity.  Plaintiffs then commenced this action against the officers; they did not name the corporation as a Defendant.

Before this Court is Defendants' Motion to Dismiss (Docket No. 17)[1] the Amended Complaint on sovereign immunity, jurisdictional, and pleading grounds.  For the reasons stated herein, Defendants' Motion to Dismiss is granted in part (dismissing claims against Defendants Stacy Dixon and Jolene Robles for lack of personal jurisdiction), denied in part (denying other grounds asserted).  After resolution of this motion, Plaintiffs retain claims against Defendant Gretchen Cox.

## II.     Background

### A.  Parties

Discussion of the corporate parties and their principals is in order.

#### 1.  Plaintiffs

Plaintiff Allegany Capital Enterprises (or "ACE") is a 100% Indian-owned limited liability company formed under the laws of the Sac and Fox Nation of Oklahoma (Docket No. 8, Am. Compl. ¶ 1).   Plaintiff Seneca Manufacturing Co. ("SMC") is a general partnership doing business in the Seneca Nation (id. ¶ 2).  Travis Heron and Gary Sanden are the sole two partners of SMC and the members of ACE with Odie Porter (id. ¶¶ 3-4).  Heron, Sanden, and Porter reside in New York (id. ¶ 5).  Plaintiffs and their principals are

---

[1]In support of Defendants' Motion to Dismiss, they submit their attorney's Declaration (with exhibits), Defendants' Memorandum of Law, Docket No. 17.

In opposition, Plaintiffs filed their Memorandum of Law, Docket No. 21.

In reply, Defendants submit their Reply Memorandum, Docket No. 22.

experienced in tobacco manufacturing, licensing, and sales, helping other Native nations establish tribally owned and licensed tobacco manufacturers (id. ¶¶ 16-17).

### 2. Defendants

Defendants are officers of non-parties Diamond Mountain Manufacturing ("DMM") and Susanville Indian Rancheria Corporation ("SIRCO"). Defendant Gretchen Cox was chief executive officer of SIRCO and DMM (Docket No. 8, Am. Compl. ¶ 18). Cox resides in California and created DMM (id. ¶¶ 6, 18).

Defendant Stacy Dixon resides in California and was president of SIRCO and DMM (id. ¶¶ 7, 19). Defendant Jolene Robles also resides in California and was secretary of SIRCO and DMM (id. ¶¶ 8, 20).

### 3. Susanville Indian Rancheria, SIRCO, Diamond Mountain Manufacturing, and the Arbitration

Diamond Mountain Manufacturing ("DMM") is a tribal corporate entity of Susanville Indian Rancheria ("SIR"), a recognized Native tribe in California (Docket No. 8, Am. Compl. ¶ 18; Docket No. 17, Defs. Atty. Decl. Ex. A, at 1, Recital "A"; Docket No. 17, Defs. Memo. at 4).

Defendants assert that SIR wholly owned SIRCO (Docket No. 17, Defs. Memo. at 4, 15), a tribal business holding company. SIRCO, in turn, is the sole owner of DMM, a federally licensed tobacco manufacturing company (id. at 4; Docket No. 8, Am. Compl. ¶ 18). Defendants later argue (without record attribution) that SIR also owned DMM (Docket No. 17, Defs. Memo. at 15).

Plaintiffs sought to arbitrate DMM's alleged breach of contract (Docket No. 8, Am. Compl. ¶¶ 56, 57), the underlying dispute that leads to this case. Before the American Arbitration Association Arbitrator, DMM invoked tribal sovereign immunity and denied

waiver of immunity (id. ¶¶ 58, 60-62).  ACE argued that DMM waived that immunity (Docket No. 17, Defs. Atty. Decl. Ex. F; Docket No. 17, Defs. Memo. at 4).  The Arbitrator agreed with DMM, concluding that the asserted waiver was improper and ineffective, dismissing the arbitration (Docket No. 8, Am. Compl. ¶ 63; Docket No. 17, Defs. Atty. Decl. Ex. D, AAA decision; Docket No. 17, Defs. Memo. at 4).

      B.  Complaint and Amended Complaint (Docket Nos. 1, 8)

Plaintiffs filed their initial Complaint on February 1, 2019 (Docket No. 1; see also Docket No. 6, Pls. Demand for a Jury Trial).  Plaintiffs amended the Complaint on February 22, 2019 (Docket No. 8).

      1.  Allegations

In the Amended Complaint (Docket No. 8), Plaintiffs allege that Cox met with Plaintiffs' Porter and Sanden in 2015 to assist SIRCO in establishing a tribally owned tobacco manufacturing business (id. ¶¶ 22, 23).  On April 15-17, 2015, Cox met with Heron and Sanden at SMC's offices, and it was made clear that waiver of sovereign immunity was "a necessary element of any deal" between Plaintiffs and Defendants (id. ¶ 24).  On September 15, 2015, Defendants met at ACE's offices and assured Plaintiffs that tribal sovereign immunity would be waived in the deal (id. ¶ 25).

Sanden then sought a meeting with the SIR Tribal Business Council to discuss the deal and waiver; Cox represented that she could waive sovereign immunity without needing authorization from the Tribal Business Council (id. ¶ 26).  On January 26, 2016, Cox made a site visit to SMC's New York facility where Plaintiffs repeated that waiver of tribal sovereign immunity was necessary for any agreement (id. ¶¶ 27, 28).  Cox assured Plaintiffs that SIRCO was authorized to waive sovereign immunity without action by the

Tribal Business Council (id. ¶ 28).  Cox and the other Defendants then assured Plaintiffs that this waiver would occur (id. ¶¶ 29-31).

Plaintiffs' principals claimed that they relied upon these representations of DMM's waiver (id. ¶ 33) and Plaintiffs entered into three related tobacco deal agreements[2] (collectively "Tobacco Deal Contracts") with DMM for manufacturing and licensing tobacco (id. ¶¶ 35, 36).  The Management Agreement of the Tobacco Deal Contracts contained a waiver of tribal sovereign immunity (id. ¶ 38; see also id. ¶¶ 56 (§ 14.3(a) of Management Agreement, DMM waiver of sovereign immunity), 45 (§ 14.6 of Management Agreement, DMM represented that it had full authority to execute the agreement and be bound by it); Docket No. 17, Defs. Ex. A, Management Agreement).

Throughout 2016, Plaintiffs performed the Tobacco Deal Contracts by assisting DMM obtain an Alcohol Tobacco Tax and Trade Bureau license (Docket No. 8, Am. Compl. ¶ 46).  SMC leased and installed equipment while ACE ordered raw materials for DMM (id. ¶¶ 50, 51).  Defendants gave Plaintiffs repeated written and verbal assurances that they would be paid (id. ¶ 53).  Slow payments from DMM devolved into nonpayment and Plaintiffs claimed a breach of contract (id. ¶¶ 54-55).

Plaintiffs sought arbitration of their dispute with DMM but DMM invoked tribal sovereign immunity and denied an effective waiver (id. ¶¶ 56-57, 60).  Cox executed an agreement in December 2015 in which she denied having authority to waive tribal sovereign immunity (id. ¶¶ 58, 61).  Plaintiffs argue that DMM's arbitration position was "completely contrary to every representation they made in the negotiation of, and the

---

[2]Management Agreement between DMM and ACE, Docket No. 17, Defs. Atty. Decl. Ex. A; License Agreement between DMM and ACE, Docket No. 17, Defs. Atty. Decl. Ex. B; and Contract Manufacturing Agreement between DMM and SMC, Docket No. 17, Defs. Atty. Decl. Ex. C.

express provisions in, the Tobacco Deal Contracts and the resolutions they passed" (id. ¶ 62).  The Arbitrator dismissed the proceeding, ruling that it lacked jurisdiction over the dispute because of the absence of an effective waiver of DMM's tribal sovereign immunity (id. ¶ 63).

Plaintiffs conclude that DMM accepted the benefits of their performance without payment and (by renouncing its waiver of sovereign immunity) leaving Plaintiffs with no remedy against it (id. ¶ 64).  Plaintiffs then turned to Defendants and this action for relief.

### 2.  Causes of Action

The First Cause of Action alleges fraudulent misrepresentations, asserting that Defendants misrepresented that they had the power to waive tribal sovereign immunity on behalf of DMM (Docket No. 8, Am. Compl. ¶¶ 66-67).  Plaintiffs also accuse Defendants of misrepresenting that they had authority to bind DMM to all terms of the contracts, including the waiver of sovereign immunity (id. ¶ 70).  After DMM's breach of Plaintiffs' contracts, Defendants admitted that they lacked the authority to waive tribal sovereign immunity for DMM (id. ¶ 77).  Defendants' misrepresentations left Plaintiffs with no legal recourse and led to principal damages of $187,000[3] to ACE and $107,328 to SMC (id. ¶¶ 78-79).

The Second Cause of Action alleges fraud in the inducement, that Defendants misrepresented that they had power to waive tribal immunity for DMM (id. ¶¶ 81-82) and that Defendants knew the representations were false (id. ¶¶ 85-87).  Plaintiffs' reliance led them to suffer damage, $187,076.81 to SMC and $107,328 to ACE (id. ¶ 94).

---

[3]This differs from the damages to ACE alleged in the other causes of action, Docket No. 8, Am. Compl. ¶¶ 94, 103, 116.

The Third Cause of Action claims Cox breached the implied warranty of authority, arguing that Cox, as CEO of DMM, warranted that she had authority to bind DMM to waive that sovereign immunity (id. ¶¶ 96-98).  After DMM breached the contracts, DMM invoked that immunity in the arbitration and argued that Cox lacked the authority to waive that immunity (id. ¶ 100).  The arbitration was dismissed for lack of jurisdiction, depriving Plaintiffs of a legal recourse against DMM (id. ¶¶ 101-02), resulting in Plaintiffs suffering damage (id. ¶ 103).

Finally, the Fourth Cause of Action asserts that Defendants engaged in tortious misrepresentation that Defendants had the authority and power to waive DMM's sovereign immunity (id. ¶¶ 106-07).  They claim that Defendants intended to have Plaintiffs rely upon this misrepresentation and Plaintiffs reasonably relied upon it (id. ¶¶ 112, 113).  This misrepresentation led to damages to Plaintiffs when their contract arbitration was dismissed due to tribal sovereign immunity (id. ¶¶ 114-16).

C. Motion to Dismiss (Docket No. 17)

Following stipulations extending Defendants' time to answer the Amended Complaint (Docket No. 12; see Docket No. 13, Order extending deadline), Defendants moved to dismiss (Docket No. 17).

Upon the parties' joint motion to extend the briefing schedule for Defendants' Motion to Dismiss (Docket No. 19; see Docket No. 18, Scheduling Order), responses to the motion were due on June 19, 2019, and replies by July 3, 2019 (Docket No. 20).  With the timely submissions by the parties (Docket Nos. 17, 21, 22), the motion then was deemed submitted without oral argument.

### III.   Discussion

A.  Applicable Standards

1.  Motion to Dismiss

Defendants have moved to dismiss on the grounds that the Complaint fails to state a claim for which relief cannot be granted (Docket No. 17).  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

9

possibility and plausibility of "entitlement to relief."' <u>Id.</u>, at 557 . . . (brackets omitted)."

<u>Iqbal</u>, <u>supra</u>, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985).  Incorporation of extra-pleading documents is at issue here and will be addressed below.

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2.   Tribal Sovereign Immunity and Jurisdiction

a.   Immunity

Defendants argue that this Court lacks subject matter jurisdiction (and the case should be dismissed under Federal Rule of Civil Procedure 12(b)(1)) because Defendants are named in their official capacities.  They claim sovereign immunity as officers of DMM. (Docket No. 17, Defs. Memo. at 3-7.)

Native tribes enjoy common law sovereign immunity, a recognition of their sovereignty absent contrary action by Congress, <u>see Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (<u>id.</u> at 3).  "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the

tribe has waived its immunity," <u>Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.</u>, 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).  This immunity applies when the plaintiff seeks judicial relief from the sovereign entity, here the native nation or its corporate entities, <u>see</u> <u>Lewis v. Clarke</u>, 581 U.S. ___, 137 S.Ct. 1285, 1290-91, 197 L.Ed.2d 631 (2017); <u>Long v. Barrett</u>, No. 2:17-cv-5741-KM-SCM, 2018 WL 1617702, at *4 (D.N.J. Apr. 3, 2018).

"Tribal sovereign immunity does not extend to individual member of a tribe," <u>Catskill Dev., L.L.C. v. Park Place Entm't Corp.</u>, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citing <u>Puyallup Tribe, Inc. v. Department of Game of State of Wash.</u>, 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977)).  Note, in this case neither side has alleged that Defendants here are members of the SIR nation.  If the tribal official is sued in their official capacity, however, immunity then covers them for their official acts, <u>Gristede's Foods, Inc. v. Unkechuage Nation</u>, 660 F. Supp. 2d 442, 478 (E.D.N.Y. 2009) (citing <u>Chayoon v. Chao</u>, 355 F.3d 141, 143 (2d Cir. 2004) (per curiam)).

b.  Burden of Proof of Immunity

Generally, Plaintiffs bear the burden by the preponderance of the evidence to establish this Court has subject matter jurisdiction despite the claims of tribal sovereign immunity, <u>Chayoon</u>, <u>supra</u>, 355 F.3d at 143; <u>Garcia v. Akwesasne Hous. Auth.</u>, 268 F.3d 76, 84 (2d Cir. 2001).  While that burden of establishing subject matter jurisdiction is on Plaintiffs, where immunity is viewed as an affirmative defense, the burden shifts to Defendants, <u>Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.</u>, 466 F. 3d 232, 237 (2d Cir. 2006) (claim of immunity of Eleventh Amendment immunity for purported arm of the state); <u>City of N.Y. v. Golden Feather Smoke Shop, Inc.</u>, No. 08-CV-3966 (CBA),

2009 WL 705815, at *4 (E.D.N.Y. Mar. 16, 2009) (applying this analysis to assertion of tribal sovereign immunity).

### c.   Arm of the Tribe and Official Capacity

Tribal sovereign immunity also applies to commercial operations of tribe, Kiowa, supra, 523 U.S. at 754-55, 758; see Cook v. Avi Casino Enterps., 548 F.3d 718, 725 (9th Cir. 2008), and extends to officers of the commercial enterprise, Cook, supra, 548 F.3d at 726-27; see Chayoon, supra, 355 F.3d at 143.  This immunity applies only when the enterprises is deemed to be an arm of the tribe, Kiowa, supra, 523 U.S. at 760; Cook, supra, 548 F.3d at 725; Native Am. Distrib. v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1296 (10th Cir. 2008) (tobacco manufacturing enterprise held to be enterprise of tribe, and immune, rather than of tribal corporation).

If the sovereign tribe is the target, then immunity applies; if liability is sought against the individual (regardless of their office), then tribal sovereign immunity does not, see Lewis, supra, 137 S.Ct. at 1291; Long, supra, 2018 WL 1617702, at *4.  When the enterprise asserting immunity is an arm of the immune tribe, the effective real party in interest is the tribe.  This combines two related concepts, real party in interest and capacity of suit.

In Lewis, the Court did not extend tribal sovereign immunity to that tribe's employees since such an extension went beyond traditional common law immunity, 137 S.Ct. at 1291-92.  The Lewis Court held that "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated," id. at 1288.  One distinction is whether the employee is sued in their official capacity or individual capacity.

The Second Circuit, in <u>Chayoon</u>, <u>supra</u>, 355 F.3d at 143, held that a plaintiff could not circumvent tribal sovereign immunity by naming officers and employees of a tribe and its gaming enterprise when attempting to sue the tribe.  In his Federal Medical Leave Act action, plaintiff Joseph Chayoon there sued officials of the Mashantucket Pequod Tribal Council, and officers and employees for the tribe's gaming company that operated the Foxwoods Resort Casino, <u>id.</u> at 142-43.  These defendants moved to dismiss claiming tribal sovereign immunity, <u>id.</u> at 143.  The Second Circuit held that Chayoon could not circumvent that immunity "when the complaint concerns actions taken in defendants' official or representative capacities and the complaint does not allege they acted outside the scope of their authority," <u>id.</u>  The Second Circuit did not discuss the distinction between the tribe and its gaming enterprise in applying sovereign immunity.  The court also acknowledged that "clearly, tribal sovereignty has the potential to deny many Americans employment benefits and rights that Congress has seen fit to extend to the private sector," <u>id.</u>, but the court concluded that it lacked authority to remedy that denial, <u>id.</u>

The Ninth Circuit, where SIR is located, has precedent that employees of tribal commercial enterprises also enjoy tribal sovereign immunity, <u>Cook</u>, <u>supra</u>, 548 F.3d at 726-27.   <u>Cook</u> involved a drunk driving accident where the defendant driver was employed by a tribal casino enterprise, 548 F.3d at 720.  The Ninth Circuit recognized tribal sovereign immunity extended to commercial enterprises of the tribe, <u>id.</u> at 725, and to employees of that enterprise, <u>id.</u> at 726-27.

The court affirmed the dismissal of claims against two casino employees, Ian Dodd, the on-duty manager who announced that drinks were on the house, and Debra

Purbaugh, the waitstaff who continued to serve the plaintiff after plaintiff obviously was intoxicated, id. at 720, 721.   Defendant Avi Casino Enterprises, Inc., a corporation organized under the laws of the Fort Mohave Indian Tribe, owned the Avi Casino, id. at 721.  Avi Casino Enterprises was wholly owned and controlled by the tribe, with its surplus deposited into the tribe's general fund, id.

Dodd and Purbaugh moved to dismiss the Complaint as to them arguing that Avi Casino Enterprises' employees were shielded by the tribe's sovereign immunity as extended to the Enterprise and to Avi Casino, id. at 722.  The District Court agreed and granted their motion, finding that Avi Casino Enterprises functioned as an arm of the tribe, hence subject to tribal immunity, id.

The Ninth Circuit affirmed, id. at 726-27, first holding that the tribe's immunity extended to its commercial enterprises, id. at 726; see Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs, 932 F.3d 843, 856 (9th Cir. 2019) (citing Cook, supra, 548 F.3d at 725); see Allen v. Gold Country Casino, 464 F.3d 1044, 1046-47 (9th Cir. 2006).  Judge Gould for the majority found the record supported the finding that Avi Casino Enterprises and the casino itself were arms of the tribe, Cook, supra, 548 F.3d at 726, from the tribe creating the corporation, wholly owning, and managing it, and requiring most of its board be tribal members, id.  The court concludes that "the economic benefit provided by the casino inure[d] to the Tribe's benefit," because the tribe is the sole shareholder of Avi Casino Enterprise and the surplus from casino operations went into the tribe's general fund, id.

Since Avi Casino and the Enterprise enjoyed tribal sovereign immunity, the Ninth Circuit then held that the Casino's employees did so as well, id. at 726-27, despite the

negative consequences that arose in this case id. at 727-28 (Gould, J., concurring).  "The principles that motivate the immunizing of tribal officials from suit—protecting an Indian tribe's treasury and preventing a plaintiff from bypassing tribal immunity merely by naming a tribal official—apply just as much to tribal employees when they are sued in their official capacity," id. at 727.  The Ninth Circuit concluded that plaintiff sued Dodd and Purbaugh "in name but seeks recovery from the Tribe," id., and plaintiffs alleged vicarious liability against Avi Casino Enterprises, id.  The court held that plaintiffs sued them in their official capacity only, id.

In a rare concurrence by the author of the majority opinion, Judge Gould stated that so long as the casino acted "as an arm of the Tribe" it gains sovereign immunity, id. at 728 (Gould, J., concurring).  There, Judge Gould conceded from this decision extending immunity to these two employees that an "unjust result is reached that our law might better preclude," id. (Gould, J., concurring).  Judge Gould then decried that Cook was

> "catastrophically injured as the result allegedly of gross and culpable negligence of Avi Casino's employees.  However, our precedent under Allen makes clear that so long as Avi Casino Enterprises was acting as an arm of the Tribe, which appears to be the case, it gains a tribal sovereign immunity commensurate with that of the Tribe itself.  From this, it follows in logic that involved casino employees, when sued in corporate capacity for torts committed in the course of employment, also gain immunity,"

leaving Cook without a remedy against Avi Casino, id. 727-28.  The judge suggests that this immunity be reexamined by the United States Supreme Court, Congress, or the tribe to have the tribe take responsibility for its casino employees' actions, id. at 728.

Extension of tribal sovereign immunity to tribe's commercial activities—and to its employees and officers—can lead to conflicts and inequities that other judges have

repeatedly recognized, see Michigan v. Bay Mills Indian Community, 572 U.S. 782, 824-25, & 824 n.4, 134 S.Ct. 2024, 188 L.Ed.2d 1071 (2014) (Thomas, J., dissenting) (citing cases of examples of entities held to be immune because they are "arms of the tribe"); see also Chayoon, supra, 355 F.3d at 143.  In dissent, Justice Clarence Thomas also cited cases of tribal immunity covering employees of tribal enterprises acting within the scope of their employment, 572 U.S. at 824 n.4.

Only enterprises deemed arms of the tribe enjoy this tribal immunity, Golden Feather, supra, 2009 WL 705815, at *5 ("Official tribal enterprises that act as a division or arm of the tribe are immune from suit as an extension of the tribe's sovereign immunity," citing, e.g., Allen, supra, 464 F.3d at 1047).  Judge Amon in Golden Feather denied defendants' motion to dismiss on sovereign immunity grounds because defendants failed to prove their relationship with the tribe, 2009 WL 705815, at *1, 5.  The tribe did not own or manage defendants' smoke shops and defendants did "not assert that the Tribe has any supervisory control over the management of the shops or that the shops 'act for the Tribe' in their business endeavors," id. at *5.

In Gristede's Foods, Inc. v. Unkechuage Nation, 660 F. Supp.2d 442, 477 (E.D.N.Y. 2009), the court held that the tribe's smoke shop was not an arm of the tribe. The court set forth factors for determining whether an enterprise is an arm of the tribe:

- how the enterprise was organized under the tribal constitution or laws;
- whether the enterprise's purposes are like a tribal government's;
- the enterprise's managing body is necessarily composed primarily of tribal officials;
- tribe's governing body had unrestricted power to dismiss members of the enterprise's governing body;
- the enterprise "acts for the tribe" in managing the organization's activities;

- whether the tribe is the legal owner of property used by the enterprise, with title held in the tribe's name;
- whether administrative or accounting activities are controlled or exercised by tribal officials; and
- whether activities occur primarily on the reservation,

id.; see Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1191 (10th Cir. 2010) (listing factors to determine whether casino and economic development authority was arm of the tribe, including whether the purposes of tribal sovereign immunity are served by extending it to the enterprise); see also Johnson v. Harrah's Kansas Casino Corp., No. 04-4142-JAR, 2006 WL 463138, at *4 (D. Kan. Feb. 23, 2006) (surveying case law, noting factors defining enterprise as a "subordinate economic organization" of the tribe).

The smoke shop defendant in Gristede's Foods claiming sovereign immunity there only produced evidence that it was licensed by the tribal council; the court held that this did not establish that the shop was an arm of the tribe, Gristede's Foods, supra, 660 F. Supp.2d at 478.

Other courts found enterprises were arms of their respective tribes. For example, the District Court for the District of Connecticut, in Worral v. Mashantucket Pequot Gaming Enterps., 131 F. Supp.3d 328, 330 (D. Conn. 2001) (motion to dismiss), held that the gaming enterprise that operates Foxwoods Resort Casino was an arm of the tribe from the record before it. There, defendants produced the tribe's law of tort claims which declared the enterprise was an arm of the tribal government and shared the tribe's sovereign immunity. The tribal general counsel also swore an affidavit declaring the enterprise's role as an arm of the tribe. Id. at 330.

3. Necessary Party, Rule 19

A party is required to be named in a case where because of that person's absence this Court cannot accord complete relief among the existing parties, or

> "that person claims an interest relating to the subject of the action is so situated that disposing of the action in the person's absence may:
>
>> "(i)    as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> "(ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest,"

Fed. R. Civ. P. 19(a)(1).  This is a defense that can be raised by motion, Fed. R. Civ. P. 12(b)(7).

When joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," id. R. 19(b). Factors to consider here include

> "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or existing parties;
>
> "(2) the extent to which any prejudice could be lessened or avoided by:
>> "(A) protective provisions in the judgment;
>> "(B) shaping the relief; or
>> "(C) other measures;
>
> "(3) whether a judgment rendered in the person's absence would be adequate; and
>
> "(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

Fed. R. Civ. P. 19(b).  If after this analysis the case cannot proceed, a motion to dismiss under Rule 12(b)(7) is properly granted, see, e.g., Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs, 932 F.3d 843, 851 (9th Cir. 2019).

When asserting nonjoinder, the party must state the name and (if known) address of the person or entity that should be joined if feasible but not joined and the reasons for not joining that person, Fed. R. Civ. P. 19(c).

### 4.   Personal Jurisdiction

"[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry.  First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process," <u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir. 1996); <u>Savin v. Ranier</u>, 898 F.2d 304, 306 (2d Cir. 1990).

As for amenability for service, "this Court sits in diversity jurisdiction in the state of New York, so it exercises personal jurisdiction over the parties in accordance with the laws of New York," <u>Hume v. Lines</u>, No. 12CV6378, 2016 WL 1031320, at *10 (W.D.N.Y. Mar. 8, 2016) (Geraci, C.J.) (citing <u>DiStefano v. Carozzi N. Am., Inc.</u>, 286 F.3d 81, 84 (2d Cir. 2001)) (Docket No. 17, Defs. Memo. at 14).  Courts first determine whether jurisdiction lies pursuant to New York law (primarily CPLR) and whether jurisdiction constitutionally comports with federal due process, <u>see</u> <u>id.</u> (Docket No. 17, Defs. Memo. at 14).

CPLR 301 allows courts to exercise such jurisdiction over persons, property, or status "as might have been exercised heretofore," N.Y. C.P.L.R. 301.  CPLR 302 gives statutory authority for exercising personal jurisdiction over non-domiciliaries.  Pertinent to this case, personal jurisdiction may exist for a tortious act committed within New York

State, id. C.P.L.R. 302(a)(2), or for transaction of any business within the state, id. C.P.L.R. 302(a)(1).

The exercise of personal jurisdiction also must comport with the requirements of federal due process, Hume, supra, 2016 WL 1031320, at *10 (Docket No. 17, Defs. Memo. at 14). Due process requires a defendant have minimum contacts with the forum jurisdiction, International Shoe Co. v. State of Wash., 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (id. at 15). "The minimum contacts test asks whether a defendant has engaged in 'purposeful availment'—i.e., whether the contacts indicate the defendant's intent to invoke the benefits and privileges of New York law," Ge Dandong v. Pinnacle Performance Ltd., 966 F. Supp.2d 374, 384 (S.D.N.Y. 2013) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (Docket No. 21, Pls. Memo. at 12). The strength of these contacts is viewed from their totality, Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010). These minimum contacts may either be specific, arising from a defendant's actions leading to the lawsuit, or general, from a defendant's transactions in the forum, see, e.g., Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 127 (2d Cir. 2008).

Due process also requires that the exercise of jurisdiction must be reasonable, Chloé, supra, 616 F.3d at 164 (Docket No. 21, Pls. Memo. at 11-12), that the exercise "comports with traditional notions of fair play and substantial justice," Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940); International Shoe, supra, 326 U.S. at 316, see Porina, supra, 521 F.3d at 127 (id. at 12).

Reasonableness to have a nonresident defendant defend herself in this jurisdiction depends upon several recognized factors: the burden of the exercise of jurisdiction upon

the defendant; the interests of the forum state in adjudicating the case; plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interests of the states in furthering substantive social policies, see Metropolitan Life, 84 F.3d at 568 (citing Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 113-14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)) (id. at 15).

### 5.  Pleading of Fraud, Rule 9(b)

Defendants argue that Plaintiffs allege fraud in their First and Second Causes of Action but fail to do so with particularity (Docket No. 17, Defs. Memo. at 18-24).  Under Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." (Docket No. 21, Pls. Memo. at 16; Docket No. 17, Defs. Memo. at 23.)  As Defendants restate the standard (Docket No. 17, Defs. Memo. at 23), "when assessing the specificity of a fraud complaint, the reviewing court should read the complaint liberally, drawing all inferences in favor of the non-moving party," Berman v. Rotterman, No. 10CV1044, 2011 WL 2149431, at *3 (W.D.N.Y. June 1, 2011) (Arcara, J.) (quoting M&T Mortg. Corp. v. Miller, 323 F. Supp.2d 405, 412 (E.D.N.Y. 2004)).

### 6.  Choice of Law

In diversity cases, federal court applies substantive law of the jurisdiction, here New York law, see Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law regime, Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  In personal injury actions, New York generally applies the law of the jurisdiction in which the injury occurred.  See Cooney v. Osgood

Machinery, Inc., 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993); Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64 (1972).  Under New York choice of law rules "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the laws of the jurisdiction involved."  Matter of Allstate Ins. Co., 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).  This Court need not determine which forum's law applies where the relevant issue would turn out same under the forum's law and no true conflict exists, Elgin Sweeper Co. v. Melson Inc., 884 F. Supp. 641, 648 (N.D.N.Y. 1995); Howard v. Clifton Hydraulic Press Co., 830 F. Supp. 708, 712 (E.D.N.Y. 1993). Additionally, where New York law and the other forum's laws have no material differences, New York law applies, Elgin Sweeper, supra, 884 F. Supp. at 648.  "New York's current choice-of-law rules require the court to consider the following three elements:  the domicile of the plaintiff, the domicile of the defendant, and the place where the injury occurred."  Lucas v. Lalime, 998 F. Supp. 263, 267 (W.D.N.Y. 1998) (Heckman, Mag. J., R&R, adopted by Arcara, J.).  Where more than one element is in the same state, that state's law should apply.  Id.; Datskow v. Teledyne Continental Motors, 807 F. Supp. 941, 943 (W.D.N.Y. 1992) (Larimer, J.).

Defendants here apply New York common law responding to Plaintiffs' claims (Docket No. 17, Defs. Memo. at 18-19, 21, 24-25) and Plaintiffs cite New York law (or Second Circuit decisions applying New York law) in support of their claims (see Docket No. 21, Pls. Memo. at 14, 15).

Defendants point to the terms of the Tobacco Deal Contracts, in which the parties agreed to binding arbitration under SIR Rancheria law (or federal law in the absence of SIR law) in the Management Agreement (Docket No. 17, Defs. Memo. at 16-17; id., Defs.

Atty. Decl. ¶ 6.d., Ex. A § 14.3(b)(i)) or California law under the License Agreement (id.,
Defs. Atty. Decl. ¶ 7.b., Ex. B ¶¶ 9, 10(D)).

If this was purely a contract dispute, the choice of law made by the parties would
have some importance.  Plaintiffs' claims, however, arise from fraudulent inducement to
enter these contracts and not from breaches of the contracts themselves.  Although SIR
Rancheria law might be invoked (as well as California law from Defendants' residence
and the governing law provision of the License Agreement), no contrary law has been
suggested for the alleged fraud and misrepresentation to raise a conflict.  This Court will
apply New York substantive law to Plaintiffs' claims.

### 7.  Applicable New York Common Law

Applying New York law, fraudulent misrepresentation is a misrepresentation of
present fact which is an inducement to the contract, see D.S. America (East), Inc. v.
Chromagrafx Imaging Sys., Inc., 873 F. Supp. 786, 796 (E.D.N.Y. 1995) (applying New
York law) (see Docket No. 21, Pls. Memo. at 15; see also Docket No. 17, Defs. Memo. at
21).  Common law fraud under New York law requires proof that a misrepresentation or
omission of a material fact, which defendant knew to be false, which defendant made with
the intention of inducing reliance, upon which plaintiff reasonably relied, and which
caused injury to plaintiff, Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)
(applying New York law).

To allege fraud in the inducement in New York law, plaintiff must prove it justifiably
relied upon the alleged misrepresentations, ACA Fin. Guar. Corp. v. Goldman, Sachs &
Co., 25 N.Y.3d 1043, 1044, 10 N.Y.S.3d 486, 487 (2015); see Kraatz v. USAA Cas. Ins.

Co., No. 16CV103, 2017 WL 876187, at *3 (W.D.N.Y. Mar. 6, 2017) (Geraci, C.J.) (applying New York law) (Docket No. 17, Defs. Memo. at 18).

"Under the doctrine of implied warranty of authority, a person who purports to make a contract, representation, or conveyance to or with a third party on behalf of another person, lacking power to bind that person, gives an implied warranty of authority to the third party and is subject to liability to the third party for damages for loss caused by breach of that warranty, including loss of the benefit expected from performance by the principal," DePetris & Bachrach, LLP v. Srour, 71 A.D.3d 460, 462, 898 N.Y.S.2d 4, 6 (1st Dep't 2010) (Docket No. 17, Defs. Memo. at 24; see Docket No. 21, Pls. Memo. at 17-18).

Tortious misrepresentation under New York law is "if the person who falsely claims to have power to bind another knows that the claim is untrue, the person has made a fraudulent misrepresentation and is subject to liability to those who, justifiably relying on the representation, suffer a loss as a consequence," id., 71 A.D.3d at 462, 898 N.Y.S.2d at 6 (Docket No. 21, Pls. Memo. at 18).

### B. Parties' Contentions

#### 1. Defendants

Defendants rest on tribal sovereign immunity to deprive this Court of subject matter jurisdiction over them in their official capacity as tribal officials (Docket No. 17, Defs. Memo. at 3-7).

They contend that DMM is a required party under Rule 19(a), but due to its invoked tribal sovereign immunity, it cannot be a party. Defendants argue that Plaintiffs' claims essentially are for breach of contract by DMM. (Id. at 7-12.) Since DMM cannot be

named, as a matter of equity and good conscience, Defendants conclude that the case should be dismissed under Rule 19(b) (id. at 12-13).

Defendants next argue that this Court (or any court in New York) lacks personal jurisdiction over these California Defendants (id. at 14-17).

On the substance of Plaintiffs' claims, Defendants contend that Plaintiffs fail to state a cause of action (id. at 18-25).  As for the First and Second Causes of Action, Defendants contend that Plaintiffs pled forms of fraud that needed to be pled with specificity under Rule 9(b) (id. at 23-24).  Furthermore, these causes of action are duplicative of a breach of contract claim and Plaintiffs cannot avoid this by failing to plead that claim expressly (id. at 21-23).

Defendants contend that Plaintiffs failed to allege any justifiable reliance to sustain their Third and Fourth Causes of Action (id. at 24-25).

### 2.  Plaintiffs

Plaintiffs respond that Defendants' attached documents should be disregarded on their motion to dismiss, which should rest solely on the four corners of the Amended Complaint (Docket No. 21, Pls. Memo. at 2-3).

Plaintiffs next deny that Defendants should enjoy tribal sovereign immunity since Plaintiffs sued Defendants in their individual capacity (id. at 3-5).  They also deny that DMM is a necessary party in this action because they were not alleging a contract claim (id. at 5-8).  Plaintiffs next assert personal jurisdiction over Defendants that satisfy CPLR 302(a)(2) and due process requirements (id. at 8-14).

Plaintiffs contend that their First and Second Causes of Action do allege fraud with particularity under Rule 9 (id. at 15-16).  They say they alleged justifiable reliance in their

Third and Fourth Causes of Action (id. at 14-15).  They finally contend that the Amended Complaint alleged enough facts to support their Third and Fourth Causes of Action for implied warranty of authority and tortious misrepresentation and assurance of payments (id. at 17-19).

### 3.  Defense Reply (Docket No. 22)

Defendants reply that the documents included with their motion were properly before this Court because these documents were incorporated in the Complaint by reference (Docket No. 22, Defs. Reply Memo. at 1).  They contend that Plaintiffs are seeking a second bite of the apple on the question of tribal sovereign immunity (id. at 3-6), claiming that Plaintiffs' allegations here are "directly related to the tribe's sovereign immunity, and the function and operation of its business" (id. at 4).  They reassert that DMM is an essential party but, due to tribal immunity, it cannot be joined here (id. at 6-7).  There was no personal jurisdiction over Defendants (id. at 7-8) and Plaintiffs have not adequately pled their justifiable reliance on Defendants' representations (id. at 8-9).

* * * *

Four major issues are potentially dispositive of Defendants' motion and of this case.  First is their claim to tribal sovereign immunity as officers of tribal affiliates.  Second is whether this Court has personal jurisdiction over these California defendants.  Third is whether DMM is a necessary party in this action and (if not) whether this action should proceed in its absence.  Finally, fourth is whether Plaintiffs state claims.

A threshold issue, however, is the scope of evidence this Court may consider in this Motion to Dismiss.  This Court will first address Rule 12 and materials not incorporated in the amended pleading, then address the substantive dispositive issues.

C.  Documents Considered in this Motion to Dismiss

Defendants attached with their moving papers the Tobacco Deal Contracts for management and licensing between DMM and ACE and the manufacturing contract between DMM and SMC (Docket No. 17, Defs. Atty. Decl. Exs. A, B, C).  They also included the American Arbitration Association ("AAA") award between ACE and DMM (id. Ex. D) and the briefing of DMM and ACE before the AAA (id. Exs. E, F).

Defendants contend that, while not included by Plaintiffs, these documents were incorporated by reference in the Amended Complaint (Docket No. 17, Defs. Atty. Decl. ¶ 4).  These documents are important because Defendants' arguments that they enjoy tribal sovereign immunity are dependent upon this extra-pleading documentation of the chain of ownership from the SIR nation to DMM (Docket No. 17, Defs. Atty. Decl. ¶ 6a., Ex. A; Docket No. 17, Defs. Memo. at 4).

Plaintiffs object because they did not allege a contract claim (Docket No. 21, Pls. Memo. at 3).

The Amended Complaint does not allege a breach of contract but alleges fraud in inducing that contract.  The pleading references some of the terms of the Tobacco Deal Contracts, their breach, and the arbitration that concluded with Plaintiffs unable to sue DMM due to its tribal sovereign immunity (Docket No. 8, Am. Compl. ¶¶ 45, 56, 38).

Since the Amended Complaint references the Tobacco Deal Contracts (see Docket No. 17, Defs. Atty. Decl. Exs. A-C), this Court will deem them incorporated by reference in the pleading and subject to consideration in this Motion to Dismiss.  This Court also considers the AAA Arbitrator's decision (id. Ex. D) because it is referenced in the Amended Complaint (Docket No. 8, Am. Compl. ¶ 63).

27

The arguments before the Arbitrator (Docket No. 17, Defs. Atty. Decl. Exs. E, F) are different.  Although Plaintiffs refer to DMM's argument before the Arbitrator (Docket No. 8, Am. Compl. ¶¶ 57-62), they make this reference to show that it was contrary to their position regarding Defendants' ability to waive immunity (id. ¶ 62).  Plaintiffs do not assert DMM's argument for its truth and are not adopting it as their contention; thus, this document (Docket No. 17, Defs. Atty. Decl. Ex. E) is not incorporated by reference into the pleading.

Defendants also produce Plaintiffs' arguments before the Arbitrator as an exhibit (Docket No. 17, Defs. Atty. Decl. ¶¶ 3, 9, 14, Ex F; Docket No. 17, Defs. Memo. at 4), claiming that Plaintiffs' arguments were stated in the Amended Complaint and thus the underlying documents can be incorporated by reference (Docket No. 22, Defs. Reply Memo. at 3-4, citing Docket No. 8, Am. Compl. ¶¶ 57-62).  Plaintiffs, however, allege that the arbitration occurred (see Docket No. 8, Am. Compl. ¶ 57) but did not incorporate their arbitration arguments in the pleading that these arguments should be considered in this Motion to Dismiss.  The paragraphs cited by Defendants do not present Plaintiffs' arbitration arguments.  This Court, therefore, declines to incorporate ACE's letter brief (Docket No. 17, Defs. Atty. Decl. Ex. F) or DMM's briefing before the Arbitrator (id., Ex. E).

### D.  Official Capacity and Tribal Sovereign Immunity

#### 1.  Tribal Sovereign Immunity and Arm of the Tribe

Application of tribal sovereign immunity in this case turns upon whether DMM (and SIRCO) is an arm of SIR, a recognized Indian nation that enjoys tribal sovereign immunity (see Docket No. 17, Defs. Atty. Decl. Ex. A, at 1 (recital); id., Defs. Memo. at 4), Santa

Clara Pueblo, 436 U.S. at 58; Kiowa, supra, 523 U.S. at 754.  SIR's tribal immunity extends to its commercial enterprises only if SIRCO and DMM are deemed arms of the tribe.  That immunity further extends to the officers and employees of these enterprises, Chayoon, supra, 355 F.3d at 143; Cook, supra, 548 F.3d at 725, where they acted "in their official capacity and within the scope of their authority," Cook, supra, 548 F.3d at 727.

The cases discussed above had records for those courts to determine that the enterprises there were arms of the tribe.  For example, in Worral, supra, 131 F. Supp.3d at 330, the tribe's law expressly declared that the enterprise was an arm of the tribe and tribal general counsel declared the role of the enterprise, see also Chayoon, 335 F.3d 141 (also involving casino enterprise operating Foxwoods Resort Casino).  In Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc., defendant was declared an arm of the Chickasaw Nation based on its federal incorporation, 585 F.3d 917, 918, 921 (6th Cir. 2009).

Other cases have showed the deficiency in their respective records and the courts concluded that an enterprise was not an arm of the tribal nation and not entitled to sovereign immunity, Gristede's Foods, supra, 660 F. Supp.2d at 478; Golden Feather, supra, 2009 WL 705815, at *5.  These defendants did not assert supervisory control by the tribe, Golden Feather, supra, 2009 WL 705815, at *5, or ownership interest by the tribe in the enterprise, Gristede's Foods, supra, 660 F. Supp.2d at 478, that would suggest that the enterprise was an arm of the tribe.

The record here regarding DMM and SIRCO, however, is as deficient as those in Gristede's Foods and Golden Feather.  Plaintiffs allege only SIRCO's ownership of DMM

(Docket No. 8, Am. Compl. ¶ 18).  Neither side assert with evidence SIRCO's ownership by SIR.  The only allegation of SIR's relationship with SIRCO is in Defendants' unsworn Memorandum of Law (Docket No. 17, Defs. Memo. at 4, 15).  This Court is not saying that SIRCO is not an arm of SIR, the record here cannot yet determine that fact.

Defendants argue that Plaintiffs conceded that DMM is an arm of SIR in the Amended Complaint (Docket No. 17, Defs. Memo. at 4), but Defendants' argument is based upon DMM successfully asserting the ineffective waiver of tribal sovereign immunity before the Arbitrator and not any concession by Plaintiffs or in the Amended Complaint.  Those allegations cited by Defendants (id., citing Docket No. 8, Am. Compl. ¶¶ 63-64) merely relate the Arbitrator's decision to accept that DMM enjoyed tribal immunity (Docket No. 8, Amended Compl. ¶ 63) and that Defendants and DMM accepted benefits from Plaintiffs' companies without compensation (id. ¶ 64).  The issue before the Arbitrator, however, was the efficacy of waiver of that immunity that the Arbitrator presumed existed.  There is no concession by Plaintiffs in the Amended Complaint that DMM is an arm of SIR.

Plaintiffs also did not sue Defendants in their official capacity (in DMM or SIRCO or in the tribe).

Defendants' citation to Long v. Barrett, No. 2:17-cv-5741-KM-SCM, 2018 WL 167702 (D.N.J. Apr. 3, 2018), is unpersuasive since Long involved that tribe's Director of Finance, id. at *2, 4.  Defendants here are alleged to be officers of DMM, a corporation owned by SIRCO (a wholly owned entity of the SIR nation), and SIRCO itself, not of the tribe SIR.

* * * *

30

Here, two corporations separate SIR from Defendants.  Plaintiffs have not asserted (directly or vicariously) claims against the corporate entities SIR, SIRCO, or DMM.  They also did not name SIR or SIRCO in the arbitration for breach of contract by DMM (see Docket No. 8, Am. Compl. ¶ 57; see also Docket No. 17, Defs. Atty. Decl. Ex. D).  Plaintiffs do not allege SIR's role in the Amended Complaint.

SIRCO is identified as a tribal business holding company of SIR (see Docket No. 8, Am. Compl. ¶ 18).  Defendants' extra-pleading documents assert the corporate ownership of DMM, citing the Tobacco Deal Contracts (Docket No. 17, Defs. Atty. Decl. Ex. A), the Arbitrator's decision (id., Ex. D, at 1), and their arguments in the Memorandum of Law (Docket No. 17, Defs. Memo. at 4).  Contrary to their assertion, however, there is nothing in the record stating that SIR wholly owned SIRCO save the statement in their Memorandum of Law (cf. Docket No. 17, Defs. Memo. at 4) and a resolution from DMM attached to the License and Contract Manufacturing Agreements which declared that SIRCO "was established as an economic arm of the Tribe to further the economic holdings of the Susanville Indian Rancheria" (Docket No. 17, Defs. Atty. Decl. Ex. B, Resolution No. DMM-11-2016, at 1, attested to by Defendants Robles and Dixon, id. at 3).  The Arbitrator merely found that DMM enjoyed sovereign immunity based upon SIRCO's immunity and discussed whether that immunity was waived (Docket No. 17, Defs. Atty. Decl. Ex. D).  To have Defendants enjoy SIR's tribal sovereign immunity, this Court would have to pierce the corporate veils for two intervening corporations to reach the tribe and further would have to go beyond the four corners of the Amended Complaint (and other documents now deemed incorporated therein) to engage in that exercise.

The issue, then, is whether DMM is an arm of SIR.  Defendants implicitly argue that SIRCO's ownership makes DMM, although once removed from SIR, an arm of the tribe.  To answer this, however, this Court first must decide if SIRCO (DMM's owner) is an arm of SIR.

Applying the Ninth Circuit's tests for extending tribal immunity to its enterprises, e.g., Cook, supra, 548 F.3d at 725-26; Allen, supra, 464 F.3d at 1046-47, and the factors noted by the Eastern District of New York in Gristede's Foods, supra, 660 F. Supp.2d at 477, and the Tenth Circuit in Breakthrough Management Group, supra, 629 F.3d at 1191, ("whether the purposes of tribal sovereign immunity are served by granting them immunity"), for determining if the enterprise is an arm of the tribe, this record (as opposed to Cook or Allen) does not establish the ownership, management, and board membership of SIRCO (DMM's owner) and whether it requires a majority of the board be SIR members.  This Court has the bare, unsworn assertion of defense counsel that SIR wholly owned SIRCO (cf. Docket No. 17, Defs. Memo. at 4, 15) and no allegation by Plaintiffs that would be subject to a Motion to Dismiss.  This is like the assertion of tribal relationship unsuccessfully made in Gristede's Foods, where the defendant smoke shop only showed they were licensed by the tribe without alleging any ownership by the tribe, Gristede's Foods, supra, 600 F. Supp.2d at 478.

Also unknown on the present record is where the economic benefit from SIRCO (or DMM, for that matter) would go, whether SIR benefits from SIRCO's (or DMM's) revenue.  The Amended Complaint does not allege the ownership of SIRCO (cf. Docket No. 8, Am. Compl. ¶ 18), while alleging DMM's ownership by SIRCO (id.).  It also does

not allege that SIRCO acted for SIR and the extra-pleading documents considered by this Court in this motion do not establish SIRCO's relationship with SIR.

Such a record may exist, but it has yet to be provided in this action.  Neither side stated the title ownership of SIRCO's property to show whether it was affiliated with the tribe.  The record is also silent where SIRCO operated, that is whether it functioned solely on SIR territory.

As to alignment of tribal purpose with these enterprises, see Breakthrough Management Group, supra, 629 F.3d at 1195, SIRCO's purpose relative to the tribe SIR is not disclosed in this record.  As a sign that SIRCO is an arm of SIR, the record does not show SIRCO was so closely related to the SIR (for example, in economic development) that the purposes of sovereign immunity are met.

Therefore, it is far from clear in this record that SIRCO itself is an arm of SIR, much less DMM also being an arm of the tribe one corporation removed for tribal sovereign immunity to flow to Defendants.  Defendants have not met their burden of establishing the sovereign immunity defense applies here.  The Arbitrator's decision (Docket No. 17, Defs. Atty. Decl., Ex. D) is not contrary.  The Arbitrator focused on whether tribal sovereign immunity was properly waived by DMM (Docket No. 17, Defs. Atty. Decl., Ex. D, at 2-4) and not on the threshold question of whether SIRCO or DMM were arms of the SIR tribe in order to enjoy SIR's sovereign immunity.  The record in this motion does not reveal if the Arbitrator was informed of the relationship between SIR, SIRCO, and DMM for the Arbitrator implicitly to conclude that SIRCO and DMM are arms of the tribe for immunity purposes.  There also is nothing admitted to the present record of Plaintiffs'

position on extending sovereign immunity to DMM or SIRCO to extend that immunity to Defendants.

Defendants have roles as officers of both SIRCO and DMM (see Docket No. 8, Am. Compl. ¶¶ 18-20). Absent an allegation that SIRCO is owned, managed, and benefitted SIR to deem it to be an arm of that tribe, SIR's tribal sovereign immunity does not extend to SIRCO's or DMM's officials and employees, here Defendants. There may be evidence to the contrary. On the four corners of the pleadings and the moving papers that this Court must rest to decide this Motion to Dismiss, Defendants' invocation of tribal sovereign immunity in their Motion to Dismiss (Docket No. 17) fails. This conclusion does not preclude Defendants from reasserting this argument upon admissible evidence in a Motion for Summary Judgment.

Defendants' Motion to Dismiss based upon extension of tribal sovereign immunity to them (Docket No. 17) is denied.

2. Capacity of Suit

Plaintiffs sued Defendants in their respective individual capacities (Docket No. 21, Pls. Memo. at 3-4) and does not allege their tribal roles (if any) and did not sue them officially as officials of the tribe. Defendants do not argue that they are officials of SIR. Defendants are officers of the tribal corporations (see Docket No. 17, Defs. Memo. at 6, citing Docket No. 8, Am. Compl. ¶¶ 18-20, 29-31). Plaintiffs are not alleging that Defendants made the alleged misrepresentations as officials of the corporations. The real party of interest in this case is not SIR but the individual Defendants.

In Lewis v. Clarke, defendant Clarke was a chauffeur employed by the Mohegan Tribal Gaming Authority (an arm of the Mohegan tribe) involved in an automobile accident

driving plaintiffs from the Mohegan Sun Casino, 137 S.Ct. at 1289.  The Lewis Court held

that plaintiffs' suit against Clarke was against him only in his individual capacity, not

against the tribal gaming authority or against him as an employee of the authority in his

official capacity despite driving for his employer, id. at 1288, 1291-92.  The Court also

declined to extend sovereign immunity where the employee would be indemnified,

declaring that indemnification cannot extend immunity as a matter of law, id. at 1292.

In this case, the parties are not contending that the SIR tribe would indemnify

Defendants if held liable in this case.  This is a further ground for directing liability upon

the Defendants individually rather than whatever official roles they may have within the

SIR nation.

Therefore Defendants' Motion to Dismiss (Docket No. 17) on official capacity

grounds is denied because Plaintiffs alleged claims against them in their individual

capacities.

### 3.  Impact of Extending Tribal Sovereign Immunity

To hold to the contrary and extend tribal sovereign immunity to Defendants may

lead to the unjust result here.  On the present record, Defendants seek immunity because

of their employment of a tribe's affiliated commercial enterprise, despite layers of

ownership and questions on the nature of tribal ownership or affiliation.  As Plaintiffs

allege, the tribe's commercial enterprises received Plaintiffs' services for free, from

Defendants allegedly promising to waive the enterprises' immunity to induce Plaintiffs to

contract with them and then invoking that immunity when a breach was challenged.

Defendants (especially Cox) claimed the authority to act for the corporation and then

denying it when the company wanted to assert sovereign immunity.  If Defendants receive

35

this immunity when the record does not establish tribal affiliation, their alleged deprivation of Plaintiffs would go unchallenged.

This Court, instead, rejects Defendants' assertion of sovereign immunity on the present record. Defendants' Motion to Dismiss (Docket No. 17) on this ground of extension of tribal sovereign immunity is denied.

E. DMM as a Necessary Party

Defendants next claim that this case should be dismissed under Rule 19 because the necessary party DMM for this (essentially) contract dispute was not named and, due to DMM's tribal sovereign immunity, cannot be named. This Court disagrees; complete relief can be afforded with the present parties and the Court does not need DMM to effect relief. Plaintiffs' claims are not for breach of contract; they claim they were misled on a crucial provision that led them to enter into the Tobacco Deal Contracts, that DMM would waive its sovereign immunity based upon representations from Defendants that the waiver would occur and Defendants had full authority to waive. Since Defendants do not claim that DMM would defend or indemnify them in this case to make DMM the real party in interest. This would be akin to state employees or officers sued for their official acts seeking defense and indemnification from the state while the state itself may enjoy sovereign immunity (for example, under the Eleventh Amendment). Plaintiffs are not impeded from pursuing their claims and Defendants are not hindered from defending themselves because DMM is not a party here.

Neither side is at risk of having inconsistent obligations or incurring multiple liabilities if this case proceeds without DMM. Only DMM would face inconsistent

obligations if this Court were to include them as a Defendant despite its declared sovereign immunity.

Defendants' arguments on this ground for dismissal (Docket No. 17) is denied.

### F.  Long Arm Jurisdiction

Defendants are residents of California.  As they point out (Docket No. 17, Defs. Memo. at 16), the only contact Defendants had with New York is Cox's meetings at Plaintiffs' facilities in the Seneca Nation Territory in New York (Docket No. 8, Am. Compl. ¶¶ 27-28) and Defendants' meeting there where Defendants made assurances (id. ¶ 25). Defendants also contend that New York lacks an interest in these contracts, that all of Plaintiffs' services were to be rendered in California.  They conclude that the minimum contacts with New York are lacking.  (Docket No. 17, Defs. Memo. at 17.)

Defendants point to the Management Agreement and its forum selection provision for litigating in federal courts in California (id.; Docket No. 17, Defs. Atty. Decl. Ex. A, § 14.3(a)), although the arbitration by DMM and Plaintiffs venued in Buffalo, New York (Docket No. 17, Defs. Memo. at 16 n.5; Docket No. 17, Defs. Atty. Decl. Ex. A, § 14.3(b)(ii)).  The agreements had DMM and Plaintiffs agree to laws other than New York apply, either federal law, California law, or SIR Rancheria law (Docket No. 17, Defs. Memo. at 16-17); as noted above, both sides apply New York law in this case.

### 1.  CPLR Long Arm Jurisdiction

Long-arm jurisdiction depends upon the contacts each defendant has with a forum. Defendant Cox has different contact with New York that the other Defendants do not have.

### a.  Defendant Gretchen Cox

Plaintiffs argue that under CPLR 302(a)(2), the tort that occurred in New York was Defendants' misrepresentations (Docket No. 21, Defs. Memo. at 8-9).  Cox's visits in New York (Docket No. 8, Am. Compl. ¶¶ 24, 25; see id. ¶ 34 (Cox visit in January 2016 to agree in principal in contracts)), even if on behalf of DMM, is actionable against her (Docket No. 21, Defs. Memo. at 10), Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467-71, 527 N.Y.S.2d 195, 199-201 (1988) (abolishing fiduciary shield doctrine); see CPC Int'l v. McKesson Corp., 70 N.Y.2d 268, 287, 519 N.Y.S.2d 804, 814 (1987).

Looking at the totality of alleged contacts of Cox with New York stated above, Plaintiffs have alleged personal jurisdiction over Cox under CPLR 302(a)(2).

This Court need not consider Plaintiffs' alternative basis for jurisdiction under CPLR 302(a)(1), for transacting business in New York, CPC Int'l, supra, 70 N.Y.2d at 287, 519 N.Y.S.2d at 814 (Docket No. 21, Pls. Memo. at 9).

### b.  Defendants Stacy Dixon and Jolene Robles

The Amended Complaint alleges that Cox, Dixon, and Robles met with Plaintiffs at their New York offices on September 2015, assuring Plaintiffs that DMM would waive sovereign immunity (Docket No. 8, Am. Compl. ¶ 25).  Plaintiffs then allege that Defendants, in their respective corporate offices, assured Heron and Sanden that tribal sovereign immunity would be waived (id. ¶¶ 29-31), but Plaintiffs do not allege where these assurances were made.

Most of the actions in this case were allegedly by Cox, the chief executive of DMM. The only actions alleged against Dixon and Robles is their assurances made at least once in September 2015.

Looking as this Court must at the totality of each Defendant's contacts to determine if personal jurisdiction is appropriate, Plaintiffs fails to state that Dixon and Robles committed tortious actions in misrepresenting that sovereign immunity would be waived. This differs from the analysis of one defendant in Regency Capital, LLC v. CorpFinance International, Inc., No. 02 Civ. 5615 (KTD), 2003 WL 22400200, at *3 (S.D.N.Y. Oct. 20, 2003).  The court found that defendant Suzanne Biondi played "a significant role in the management" of defendant CorpFinance International and in the negotiation of the transaction at issue in Regency Capital.  Biondi negotiated the agreement that plaintiff alleges fraud, and this satisfied minimal contacts with New York for personal jurisdiction, id. at *1, 3.  The district court denied her motion to dismiss for lack of personal jurisdiction, id. at *3.

### 2.  Constitutional Due Process

#### a.  Gretchen Cox

The exercise of personal jurisdiction over Gretchen Cox, a California resident, satisfies due process, see Ge Dandong, supra, 966 F. Supp.2d at 384.  The minimum contacts Cox had here raised specific jurisdiction.  These contacts are Cox's meetings in New York negotiating the Tobacco Deal Contracts.  The fact that she appeared as the chief executive officer of DMM and SIRCO does not shield her from liability or personal jurisdiction in this forum (see Docket No. 21, Pls. Memo. at 10).

The allegations against Cox are like the individual defendant, Simone Ubaldelli, in Chloé, supra, 616 F.3d at 161-62, who was held properly under New York forum. Ubaldelli sent out a single counterfeit Chloé handbag in New York, combined with defendant Queen Bee's substantial internet sales into New York, the Second Circuit

concluded that New York courts had personal jurisdiction over Ubaldelli, id. at 164. Ubaldelli's minimum contacts met both the CPLR 302 standard and federal due process requirements, id. at 171.

In this case, Cox had at least two meeting in New York where she represented that waiver of sovereign immunity would occur and she had the power and authority to effect it, leading Plaintiffs to execute the Tobacco Deal Contracts with DMM. Cox negotiated the transaction in New York. Thus, she availed herself of New York as a forum, see Regency Capital, supra, 2003 WL 22400200, at *3 (holding Biondi's involvement in the transaction satisfies minimum contacts for due process). The Southern District of New York in Regency Capital found that Suzanne Biondi, a director and officer of defendant enterprise, played a significant role in the negotiation of the transaction. From that role, the court concluded that Biondi purposefully availed herself of New York as a forum, id.

Defendants argue that the Asahi factors weight against exercising personal jurisdiction in this forum (Docket No. 17, Defs. Memo. at 15-17). They contend that they would suffer burden defending themselves in New York but point to the forum selection clause in DMM's agreements with Plaintiffs (Docket No. 17, Defs. Memo. at 16-17), agreements Defendants were not parties to (see also Docket No. 21, Pls. Memo. at 13). Defendants, however, have not stated how they are burdened aside from the implied obvious geographic burden.

Plaintiffs argue that by meeting CPLR's long-arm statute, they meet the less strenuous federal due process standards (Docket No. 21, Pls. Memo. at 12).

Next, Defendants assert that New York lacks any interest because the contracts involve services to be rendered in California (Docket No. 17, Defs. Memo. at 17). The

causes of action alleged here, however, are about the fraud leading to formulation of these contracts, where the fraud allegedly occurred in New York.  Although Defendants argue that they have no property or contacts with New York (cf. id. at 16), this address about general jurisdiction and not specific jurisdiction, see Maersk, Inc. v. Neewra, Inc., 554 F. Supp.2d 424, 444-45 (S.D.N.Y. 2008).  New York has an interest in avoiding fraud occurring within its jurisdiction, id. at 445 (New York's interest in discovering and imposing liability for alleged frauds outweighs defendant's interest in not being tried in New York).

Defendants then conclude that the other Asahi factors weigh against personal jurisdiction in New York (Docket No. 17, Defs. Memo. at 17) without stating how they reached this conclusion.

Therefore, for Defendants' Motion to Dismiss Gretchen Cox on personal jurisdiction grounds is denied.

### b.  Stacy Dixon and Jolene Robles

The claims against the other Defendants, Dixon and Robles, are not as substantial as Cox.  Their role is alleged to be more limited than Cox; Plaintiffs allege only one meeting with Plaintiffs where Dixon and Robles assured that waiver would occur and general allegations that these assurances were repeated (Docket No. 8, Am. Compl. ¶¶ 25, 29-31).  Plaintiffs have not alleged the details for the general reassurances made by Dixon and Robles.  The Amended Complaint did not allege what else Dixon and Robles did in implementing the waiver or representing that a waiver would be executed.

Neither side has represented the powers of the president of DMM (Dixon) or its secretary (Robles) and whether either officer has a role in waiving immunity.  Plaintiffs allege that all three Defendants misrepresented, but Cox signed the Tobacco Deal

Contracts after representing that waiver would occur (Docket No. 8, Am. Compl. ¶¶ 40, 41, 45) but later argued to the Arbitrator that she lacked the authority to waive DMM's immunity (id. ¶¶ 58, 61).

Dixon and Robles' roles are like that of director Irwin Liptz in <u>Regency Capital</u>, wherein the court found he was only indirectly involved in negotiation of the transaction and that his contacts were insufficient for the court to exercise personal jurisdiction over him, 2003 WL 22400200, at *3.  Liptz was a lawyer-advisor for the defendant corporation in Maryland and was found not to be an active participant in the transaction or the alleged fraudulent scheme in that case, <u>id.</u>  The court held that both New York's long-arm statute and federal due process were not met for suing Liptz in New York, <u>id.</u>

Looking at the totality of the alleged contacts of Dixon and Robles with New York and their alleged involvement, Plaintiffs allege that they had a more diminished role and only one or two times in New York interacting with ACE.  As a result, it offends traditional notions of fair play and substantial justice to extend personal jurisdiction in this state over them.

Therefore, Defendants' Motion to Dismiss on personal jurisdiction grounds is granted as to Dixon and Robles but denied as to Cox.

### G. Pleading with Particularity

Defendants argue that Plaintiffs fail to allege fraud with particularity as required under Federal Rule 9.

#### 1. First Cause of Action

The First Cause of Action alleges Defendants committed fraudulent misrepresentation that (1) DMM would waive its sovereign immunity and (2) that

Defendants (particularly Cox) had the authority on their own to affect that waiver. Defendants argued that Plaintiffs failed to plead with particularity their justifiable reliance upon Defendants' alleged representations, concluding that Plaintiffs should have investigated the representations made to them (Docket No. 17, Defs. Memo. at 18-19).

Defendants' reliance on Kaye Dentistry, PLLC v. Turchin, No. 13 Civ. 5306 (JMF), 2014 WL 2649976 (S.D.N.Y. June 13, 2014), is misplaced. There, the Southern District of New York granted a motion to dismiss where the fraud cause of action covered the same issues as a contract claim. The parties entered an agreement to sale a dental practice, including as an asset a list of active patients (that is, those seen in the last five years). Id. at *1. The agreement also provided a two-week due diligence period in which plaintiff could "perform a detailed accounting of Practice Assets," id., and could determine not to move ahead with the transaction and withdraw from the agreement if necessary, id. Plaintiff Kaye Dentistry performed some due diligence, closed the transaction, but later found the patient list to be deficient, id., at *1-2. Kaye Dentistry sued for breach of contract and fraud and defendant moved to dismiss.

Applying Rule 9(b) particularity requirements, the Kaye Dentistry court held that "the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent,'" id. at *5, quoting Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 182, 197 (2d Cir. 2013). Plaintiff's fraud allegation failed to meet Rule 9(b) because Kaye Dentistry failed to name the speaker or presenting factual allegations giving rise to an inference of fraudulent intent since plaintiff merely alleged that defendant knew their representations were false, Kaye Dentistry,

43

supra, 2014 WL 2649976, at *5.  This court also concluded that plaintiff failed to allege justifiable reliance because he did not exercise his rights during the two-week due diligence period to investigate defendant's patient base, id.

Plaintiffs here alleged the misrepresentations, that DMM intended to waive its tribal sovereign immunity and Cox was authorized to do so.  They alleged that Cox made these representations numerous times, in Plaintiffs' offices as well as in California at DMM's facility.  (See Docket No. 8, Am. Compl. ¶¶ 24-26, 28, 29.)  Plaintiffs asserted that they relied upon Defendants' representations, ultimately entering the Tobacco Deal Contracts (see id. ¶¶ 33, 35).

The above discussion applies to allegations against Cox.  As for her codefendants Dixon and Robles, Plaintiffs' allegations are vaguer.  Plaintiffs allege a September 15, 2015, meeting at ACE where all three Defendants were present and assured Plaintiffs' principals about waiver of immunity (Docket No. 8, Am. Compl. ¶ 25).  Plaintiffs then allege that Dixon and Robles generally assured them that waiver would be entered by SIRCO (id. ¶¶ 30, 31) but again without alleging further details.  Again, Plaintiffs allege reliance upon all three Defendants' representations and assurances that DMM would waive immunity (id. ¶¶ 33, 35).

Unlike the diligence of plaintiff in Kaye Dentistry, supra, 2014 WL 2649976, at *1-2, 5, in failing to audit defendant's patient lists that plaintiff intended to acquire, Plaintiffs' principals repeatedly sought reassurances that DMM or SIRCO (see Docket No. 8, Am. Compl. ¶¶ 24, 28-31) would waive sovereign immunity.  Sanden requested a meeting with SIR Tribal Business Council, but Cox reassured him that she had the authority to waive sovereign immunity (id. ¶25).  Thus, Plaintiffs tried to ensure that the proper authorities

approved the waiver but were deterred by Cox.  The source for confirmation of DMM or SIRCO's ability and willingness to waive sovereign immunity and the procedure for a waiver would be the Defendants, the chief executive officer, president, and secretary of DMM and SIRCO (see id. ¶ 42).  Plaintiffs allege that Defendants had "superior and exclusive knowledge" (id. ¶ 74; see also id. ¶¶ 91 (Second Cause of Action), 113 (Fourth Cause of Action), 75-76 (First Cause of Action, reliance upon the "superior and exclusive knowledge of Dixon and Robles)).  Plaintiffs also cite to SIRCO's website wherein at a "Partnering With Us" page acknowledged the importance of waiver of immunity and its willingness to issue limited waivers of immunity (id. ¶ 32).

Thus, Defendants' Motion to Dismiss (Docket No. 17) the First Cause of Action on failure to plead with particularity is denied.

### 2.  Second Cause of Action

Similarly, Defendants' Motion to Dismiss (Docket No. 17) the Second Cause of Action is denied.  This Second Cause of Action focused on Defendants inducing Plaintiffs to enter the Tobacco Deal Contracts based upon the misrepresentation that Defendants could waive tribal sovereign immunity for DMM (Docket No. 8, Am. Compl. ¶ 84).  For the reasons stated for the First Cause of Action, Plaintiffs have alleged with particularity the specific misrepresentation that Defendants (particularly Cox) made that Cox had the authority to waive sovereign immunity for DMM without further action by another entity, the Tribal Business Council.

Thus, Defendants' Motion to Dismiss (Docket No. 17) the Second Cause of Action is denied.

### 3.   Failure to Allege Breach of Contract

Defendants argue that the First and Second Causes of Action also are duplicative of a breach of contract claim that Plaintiffs has not asserted, and Plaintiffs cannot avoid this contract claim by not pleading it (Docket No. 17, Defs. Memo. at 21-23).   Defendants contend Plaintiffs did not assert a formal contract claim because of DMM's tribal sovereign immunity (id. at 22).

Whatever the reason[4], Plaintiffs have not asserted a breach of contract claim against DMM or Defendants here.   Plaintiffs are suing for the alleged torts of misleading them into contracting with DMM.   Unlike Kaye Dentistry, supra, 2014 WL 2649976, at *2, 5, Plaintiffs have not alleged breach of contract that is parallel to the misrepresentation claims, such as the First Cause of Action.   While Plaintiffs may not allege a claim for fraudulent inducement based upon the same facts for a breach of contract claim (see Docket No. 17, Defs. Memo. at 21-22, citing cases), Plaintiffs' present claims cannot be duplicates of nonexistent contract claims.   Defendants fail to argue that Plaintiffs are compelled to sue for breach of contract even if their claims might be better alleged as such.   Defendants' arguments on this basis here are rejected.

### H.  Justifiable Reliance, Third and Fourth Causes of Action

The Third and Fourth Causes of Action (which incorporated by reference earlier allegations, Docket No. 8, Am. Compl. ¶¶ 95, 105), allege the breach of the implied warranty of authority and tortious misrepresentation.   The prior allegations included

---

[4] In addition to DMM enjoying tribal sovereign immunity, Plaintiffs may not state a breach of contract claim against these Defendants because they are not parties of ACE or SMC's Tobacco Deal Contracts. By their terms, the Management Agreement and License Agreement had disputes venued in federal courts in California or arbitration of disputes under the Management Agreement before the AAA in Buffalo.   Docket No. 17, Exs. A, B.   Defendants argue these points in support of dismissal of this action, Docket No. 17, Defs. Memo. at 16.

Plaintiffs' reasonable reliance upon the individual Defendant's representations of their respective authority to waive DMM's sovereign immunity (<u>id.</u> ¶¶ 74-76) and that Defendants intended Plaintiffs to rely upon these misrepresentations (<u>id.</u> ¶ 73).

Relying upon their earlier arguments about justifiable reliance resting upon Plaintiffs' failure to conduct due diligence as to Defendants' representations (<u>see</u> Docket No. 17, Defs. Memo. at 18-21), Defendants assert that Plaintiffs failed to allege their justifiable reliance upon Defendants' representations to state the Third or Fourth Causes of Action (<u>id.</u> at 25).  First, Plaintiffs alleged justifiable reliance in these causes of action, based upon the facts alleged to be applicable for all claims.  As stated above, Plaintiffs' principals repeatedly sought reassurance from Defendants, that Cox had the authority to act on behalf of DMM to assure Plaintiffs that immunity would be waived and in waiving immunity on behalf of DMM (Docket No. 8, Am. Compl. ¶¶ 28, 29-31).  Plaintiffs' reliance was their entry into the Tobacco Deal Contracts, which they allege their principals relied upon Defendants' representations and assurances in executing these contracts (<u>id.</u> ¶¶ 33, 35).

Defendants' Motion to Dismiss the Third and Fourth Causes of Action (Docket No. 17) is denied.

## IV.    Conclusion

Defendants' Motion to Dismiss (Docket No. 17) is granted in part dismissing claims against Stacy Dixon and Jolene Robles on personal jurisdiction, denied in part. Defendants' remaining arguments for dismissing claims against Gretchen Cox is denied. Thus, the only defendant that remains after this motion is Cox.  All four of Plaintiffs' causes of action against Cox survive this motion.

The denial of dismissal is based upon the present record before this Court.  Cox shall file and serve her Answer to the Amended Complaint.

## V.     Orders

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 17) is GRANTED IN PART (dismissing claims against Defendants Stacy Dixon and Jolene Robles), DENIED IN PART (denying dismissal claims against Defendant Gretchen Cox), consistent with the foregoing decision.

FURTHER, Defendant Cox shall file and serve their Answer or otherwise move within 14 days of the entry date of this decision consistent with Rule 12 (a)(4)(A).

FURTHER, the Clerk of Court is directed to enter judgment dismissing claims against Stacy Dixon and Jolene Robles.

SO ORDERED.


Dated:        February 12, 2021
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge